[No. B233204. Second Dist., Div. Five. July 24, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN JERMAINE JONES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

COUNSEL

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, Joseph P. Lee and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

On appeal, defendant Kevin Jermaine Jones, who was convicted of making a criminal threat (Pen. Code, § 422),[1] grand theft from a person (§ 487), and simple assault (§ 240), contends, inter alia, that the trial court erred in admitting hearsay statements under the forfeiture by wrongdoing doctrine. In the published portion of this opinion, we hold that under the forfeiture by wrongdoing doctrine, the trial court properly admitted a statement by a witness who was dissuaded from appearing at trial by defendant. In the unpublished portion of this opinion, we order sentence enhancements stricken. We otherwise affirm the judgment.

## BACKGROUND

In June of 2009, Los Angeles Police Department Officer Pedro Cabunoc and his partner responded to a 911 call from Dominique Durden, defendant's then girlfriend. Durden told the officers that she was watering her lawn when defendant placed her in a bear hug from behind. Durden screamed and attempted to break free. Defendant placed his hand over Durden's mouth to stop her screaming. Defendant ultimately let go of Durden, and she willingly accompanied him into her apartment where they discussed ending their relationship. During the discussion, defendant grabbed Durden with his hand, placing it around her neck in a choking manner. Defendant forcibly and violently put Durden on the floor. Durden feared for her life. Eventually, defendant released Durden, took Durden's car keys, and left. Defendant was not charged in the incident.

---

[1] All statutory citations are to the Penal Code unless otherwise noted.

Carl Smith, defendant's brother, was the father of Bri-Ana Breland's children. In June of 2010, Breland drove Smith, and two children to Smith's mother's house in Inglewood. When they arrived, Smith's mother and defendant were outside. Smith, his mother, and Smith's older son left to pay Smith's phone bill. Breland and her six-month-old son waited in the car for Smith to return.

As Breland, who was pregnant, waited in the car, defendant approached yelling foul language. Defendant told Breland that she was "going to learn to keep [her] mouth closed." According to Breland, defendant expressed anger that Breland had allegedly told one of defendant's two girlfriends about the other. One of the girlfriends was Durden, a friend of Breland. Breland denied telling Durden or anyone else that defendant was seeing more than one woman.

Defendant threatened Breland. He opened the passenger door, kneeled in the car, and choked her. He held her with one hand around the middle of her neck and squeezed hard, hurting Breland "very badly." Breland felt as though she was going to die. She tried to remove defendant's hand from her, but defendant would not let go. Breland started to give up. She had trouble breathing and was light-headed and dizzy. Defendant said, "Now, bitch, I bet you won't open your mouth no more, and I bet you'll keep my name out your mouth." Defendant appeared to be getting more upset with Breland and told her that he was going to kill her. Breland believed that her life was in danger.

At some point, defendant released the pressure on Breland's neck, and Breland reached for her cell phone to call 911. Defendant grabbed the phone and threw it in the street in an attempt to break it. Defendant then grabbed a bottle of baby lotion and threw the lotion all over the inside of the car and on Breland. As he threw the lotion, defendant said, "Now what?" As defendant continued to threaten Breland, she drove away.

Although she did not know its location, Breland intended to drive to the police station. As she was driving to the police station, Breland saw Smith and his mother driving in the opposite direction. Smith's mother stopped, and Smith and his son got out of Smith's mother's car and into Breland's car. Breland did not tell Smith what had happened; he already knew. Breland asked Smith for the location of the police station. Smith said he did not want to get involved, and he and his son got out of the car. Breland drove to the police station where she told an officer what had happened. When she returned home that night, Breland was still in fear for her safety because defendant knew where she lived.

Breland spoke with Smith the night before her testimony. Smith told Breland not to go to court. Breland was afraid when she testified.

In October of 2010, during an interview of Durden by Detective Marya Parente, Durden said that she had dated defendant for about five years and ended the relationship because of physical violence between them. Durden stated that she and Breland were friends and that defendant called her on the date of the incident using Breland's phone. Durden said that defendant told her, "I just choked your homegirl out and I have her phone." Durden added that she was afraid of defendant due to the prior acts of violence between them. Detective Parente testified that Durden was not cooperative and that Durden did not seem as though she wanted to get involved.

On March 23, 2011, Detective Parente spoke to Durden after Durden had been served with a subpoena to appear in court. Durden acknowledged service of the subpoena. When Durden failed to appear in court on March 25, 2011, a body attachment for her was issued in the amount of $75,000. Thereafter, Detective Parente and other officers attempted, unsuccessfully, to contact Durden.

On March 28, 2011, Detective Parente made a request for records from the inmate telephone monitoring system—a system that records all inmate telephone calls from county jail—concerning calls placed by defendant. Defendant placed 12 phone calls to Durden that consisted of about 10 hours of conversation. Detective Parente prepared a recording and transcript of portions of the conversations. The recording was played for the jurors, and the transcript was provided to the jurors. Those recordings included what the trial court suggested were threats by defendant to dissuade Durden from testifying in his case.

## DISCUSSION

I. *The Trial Court Properly Admitted Durden's Statement Pursuant to the Doctrine of Forfeiture by Wrongdoing*

Defendant challenges the admission of two statements Durden made to Detective Parente. In the first statement, Durden said that she ended her relationship with defendant because of physical violence between them. In the second statement, Durden said that defendant called her on the date of the incident using Breland's phone and told her, "I just choked your homegirl out and I have her phone." Defendant contends that his Sixth Amendment right to confrontation was violated when the trial court admitted Durden's out-of-court statements pursuant to the doctrine of forfeiture by wrongdoing. The trial court improperly admitted the challenged statements pursuant to the doctrine of forfeiture by wrongdoing, defendant argues, because that doctrine applies to statements by victim witnesses who were murdered to prevent their

testimony and not to statements by corroborating witnesses whose testimony was prevented by means other than murder.[2] The trial court did not err.

### A. *Background*

During a hearing concerning the admissibility of evidence that defendant choked Durden in 2009, the prosecutor stated that Durden was afraid of defendant and was being "quite uncooperative." The prosecutor stated that Durden had been "served" earlier in the week, but had not appeared that morning. A body attachment was issued for Durden's arrest with bail in the amount of $75,000.

During voir dire, the prosecutor told the trial court that significant efforts had been made to locate Durden and bring her to court. The prosecutor learned that during the prior week defendant had contacted Durden from jail by phone. The prosecutor stated that during the taped phone calls, defendant attempted to dissuade Durden from appearing in court. The prosecutor asserted that Durden's hearsay statements were admissible at trial pursuant to the forfeiture by wrongdoing doctrine as set forth in Evidence Code section 1390[3] and *Giles v. California* (2008) 554 U.S. 353 [171 L.Ed.2d 488, 128 S.Ct. 2678].

The following morning, the prosecutor filed a motion to admit Durden's hearsay statements under the forfeiture by wrongdoing doctrine. At the hearing on the motion, the prosecutor argued that defendant's communications with Durden caused her to be unavailable. Detective Parente testified at the hearing that in investigating the case against defendant, Durden told the detective that she had dated defendant for five years and was afraid of defendant due to past acts of violence. In June of 2010, defendant called Durden using Breland's phone and remarked, as quoted above, "I just choked your homegirl out and I have her phone."

Detective Parente testified that Durden was served with a subpoena requiring her to appear on the date of a hearing. After Durden failed to appear on that date, and a body attachment was issued, Detective Parente and various other law enforcement officers attempted, unsuccessfully, to locate Durden.

---

[2] Respondent contends that defendant forfeited this issue because he did not raise in his objection in the trial court the specific claim he raises on appeal. The issue that defendant raises on appeal—whether the doctrine of forfeiture by wrongdoing applies only to murdered victim witnesses—is purely a question of law that may be raised for the first time on appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888–889 [55 Cal.Rptr.3d 716, 153 P.3d 282]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 406, p. 464.)

[3] Evidence Code section 1390, subdivision (a) provides, "Evidence of a statement is not made inadmissible by the hearsay rule if the statement is offered against a party that has engaged, or aided and abetted, in the wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."

Thereafter, Detective Parente obtained recordings of defendant's phone calls to Durden from jail. During the period surrounding the date Durden was subpoenaed to appear, defendant made 12 calls to her. The calls lasted for about 10 hours. Excerpts from the recordings were played for the trial court. After listening to the tapes, the trial court stated, "Well, I think it is clear from the information that the court has and reviewing the transcript that the witness was concerned that the defendant thinks that she told the police what he did, and she went to great lengths to try to assure him that she was—that she had his back. And the implication from the discussion that they had is that he has friends on the outside who can assist him in doing whatever is necessary." The trial court granted the motion.

### B. *Application of Relevant Principles*

The Sixth Amendment's confrontation clause provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." In *Crawford v. Washington* (2004) 541 U.S. 36, 53–54 [158 L.Ed.2d 177, 124 S.Ct. 1354], the United States Supreme Court held that the confrontation clause "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " (*Davis v. Washington* (2006) 547 U.S. 813, 821 [165 L.Ed.2d 224, 126 S.Ct. 2266].) In *Davis v. Washington*, the United States Supreme Court clarified the distinction between nontestimonial and testimonial statements. The Supreme Court held, "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[4] (*Id.* at p. 822.) Detective Parente interviewed Durden four months after the incident. The primary purpose of the interview was not to meet an ongoing emergency, but to gather evidence of a crime. Durden's statements during that interview were therefore testimonial.

The doctrine of forfeiture by wrongdoing is an exception to the bar against the admission of unconfronted testimonial statements. The United States Supreme Court explained the doctrine as follows, "[W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system." (*Davis v. Washington, supra,* 547 U.S.

---

[4] Respondent does not contend that the statements at issue here were nontestimonial.

at p. 833.) Thus, "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." (*Ibid.*; see *Crawford v. Washington, supra,* 541 U.S. at p. 62 ["the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds . . ."].) The doctrine of forfeiture by wrongdoing has been accepted in a number of jurisdictions. (See *Giles v. California, supra,* 554 U.S. at p. 367, fn. 2 [12 states recognize wrongdoing as a basis for forfeiting objection to out-of-court statements]; McAllister, *Down But Not Out: Why* Giles *Leaves Forfeiture by Wrongdoing Still Standing* (2009) 59 Case W. Res. L.Rev. 393.)

Defendant contends that the doctrine of forfeiture by wrongdoing applies only to statements by victim witnesses who were murdered to prevent their testimony and not to statements by corroborating witnesses whose testimony was prevented by means other than murder. No California case applies the rule, defendant argues, other than in the context of a murdered victim witness.[5]

■ Defendant's argument fails. Defendant cites no case—from California or any other jurisdiction—that holds that the doctrine of forfeiture by wrongdoing applies only when the defendant has murdered the victim of a crime to prevent that victim from testifying about that crime. The rationale behind the doctrine does not support such a limitation.[6] In *Giles v. California, supra,* 554 U.S. 353, the court stated, "The common-law forfeiture rule was aimed at removing the otherwise powerful incentive for defendants to intimidate, bribe, and kill the witnesses against them—in other words, it is grounded in 'the ability of courts to protect the integrity of their proceedings.' " (*Id.* at p. 374, citing *Davis v. Washington, supra,* 547 U.S. at p. 834.) "[O]ne who obtains the absence of a witness by wrongdoing," whatever the nature of the wrongdoing, "forfeits the constitutional right to confront[]" that witness. (*Davis v. Washington, supra,* 547 U.S. at p. 833.) That "wrongdoing" has not been limited to the killing of a victim or even of a nonvictim witness.[7] Accordingly, the trial court did not err in admitting Durden's statements to Detective Parente.

---

[5] But see *People v. Pearson* (2008) 165 Cal.App.4th 740 [81 Cal.Rptr.3d 234] (forfeiture by wrongdoing by concealing witness, as estoppel to invoke double jeopardy).

[6] The common law origins of the forfeiture by wrongdoing doctrine did not specify that the unavailable witness be a murdered victim. (See *Giles v. California, supra,* 554 U.S. at pp. 359–365; Donaldson, *Combating Victim/Witness Intimidation in Family Violence Cases: A Response to Critics of the "Forfeiture By Wrongdoing" Confrontation Exception Resurrected by the Supreme Court in* Crawford *and* Davis (2008) 44 Idaho L.Rev. 643, 648–654.)

[7] See *People v. Giles* (2007) 40 Cal.4th 833, 854 [55 Cal.Rptr.3d 133, 152 P.3d 433], overruled on another ground in *Giles v. California, supra,* 554 U.S. 353 (rule applies when witness is "genuinely unavailable to testify" and "the unavailability [is] caused by the defendant's intentional criminal act"). There are forfeiture by wrongdoing cases cited in *People v. Giles, supra,* 40 Cal.4th at pages 842–847 that do not involve the killing of a victim or witness. (See also *Reynolds v. United States* (1878) 98 U.S. 145 [25 L.Ed. 244].)

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Defendant's two one-year terms under section 667.5, subdivision (b) are stricken. The clerk of the superior court is ordered to issue an amended abstract of judgment. The judgment is otherwise affirmed.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 26, 2012, S204708.

---

*See footnote, *ante*, page 1392.