Filed 10/9/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JECARR FRANSWA MERCHANT,<br><br>    Defendant and Appellant. | D075388<br><br><br><br>(Super. Ct. No. RIF1406238) |

APPEAL from a judgment of the Superior Court of Riverside County,

Bernard J. Schwartz, Judge.  Affirmed.

Law Office of Corey Evan Parker and Corey Evan Parker for Defendant and

Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Genevieve

Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jecarr Franswa Merchant of kidnapping, battery, and dissuading a witness after he careened down the freeway refusing girlfriend Lisa R.'s pleas to stop or let her out, pulled Lisa's hair, and flung her cell phone out the window as she tried to call 911. Lisa did not appear at trial. Applying the forfeiture-by-wrongdoing exception to the Sixth Amendment right to confrontation, the court admitted her statements to law enforcement on the day of the incident. It further allowed the prosecution to introduce evidence of Merchant's prior acts of domestic violence against Lisa and his former girlfriend, J.C. Merchant challenges the admission of both categories of evidence. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Merchant and Lisa started dating in January 2014. On December 22, Lisa agreed to accompany him on a drive from Lancaster to a point near the junction with the Interstate 210 (I-210) freeway. When Merchant continued going south past I-210, Lisa asked to be dropped off, saying she had things to do. Merchant became angry and began driving recklessly. Concerned, Lisa asked to be dropped off at the shoulder. She tried to make eye contact with other drivers in hopes that someone might call for help. She managed to call 911 herself, further enraging Merchant.

As Lisa spoke to the emergency dispatcher, Merchant grabbed her by the hair and jacket. He swerved and sped at 90 to 100 miles per hour down the freeway, going on the shoulder and nearly hitting several cars. Lisa felt something bad was going to happen to her; she feared Merchant would drive to a deserted spot and beat her. Caltrans live feed

2

cameras captured Merchant's vehicle "going crazy" on the right shoulder of the freeway while a woman passenger screamed for help and tried to get out of the moving vehicle.

Lisa told the dispatcher, "my boyfriend − he is kidnapping me. He's in my Ford Excursion. And he won't pull over. He's on [Interstate] 15 headed to San Diego, please somebody help me." She tried to convey their location and direction of travel. Furious, Merchant told her, "You're makin' me go to jail bitch. Whatever, I already got a charge like this and shit . . . I don't need this. I'll go to jail for life." At some point the 911 call dropped. When Lisa tried to call back, Merchant ripped the phone out of her hand and threw it out the window.

Merchant exited the highway and drove over a center island. Lisa tried to open the door to escape. Law enforcement caught up just as Lisa managed to shift the gear into park. Merchant's vehicle was low on gas and would not restart. A California Highway Patrol officer interviewed Lisa at the scene. She described what happened in detail and estimated Merchant drove for 10 or 12 minutes as she begged to be let out.

The Riverside County District Attorney (D.A.) filed an amended information charging Merchant with kidnapping (Pen. Code, § 207, subd. (a), count 1), willful infliction of corporal injury (Pen. Code, § 273.5, subd. (a), count 2), dissuading a witness (Pen. Code, § 136.1, subd. (c)(1), count 3), and robbery (Pen. Code, § 211, count 4). The information alleged Merchant had served three prior prison terms (Pen. Code, § 667.5, subd. (b)), was previously convicted of a serious felony (Pen. Code, § 667, subd. (a)), and had a prior strike conviction (Pen. Code, §§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)).

3

The case proceeded to trial in May 2017.  The court allowed the prosecution to introduce Merchant's past acts of domestic violence—two directed at Lisa and six directed at his former girlfriend, J.C.—to show his propensity for domestic violence and his intent and common plan.  (Evid. Code, §§ 1109, 1101, subd. (b).)[1]  Lisa never appeared for trial, and the parties stipulated she was unavailable (§ 240).  Over defense objection, the court relied on a series of jail calls between Merchant and Lisa to apply the forfeiture-by-wrongdoing exception to the Sixth Amendment right to confrontation.  Based on this ruling, the prosecution introduced Lisa's statements to the highway patrol officer on December 22.

Merchant did not testify.  His primary defense was that there was no kidnapping—"What kidnapper allows his victim to call 911 and talk for ten minutes?"  Counsel labeled her recorded statements a "hysterical, unbelievable version of what happened" and argued Lisa invented the kidnapping allegation because she was angry at Merchant.

The jury found Merchant guilty as charged on counts 1 and 3.  On count 2, it convicted him of the lesser included offense of misdemeanor battery against a spouse or cohabitant (Pen. Code, § 243, subd. (e)); on count 4 it acquitted him of robbery.  Merchant admitted his prior conviction allegations.  In November 2017, the court sentenced him to a total term of 29 years, consisting of the eight-year upper term for count 1, doubled for the strike; a consecutive three-year middle term on count 3, doubled

---

[1]     Further statutory references are to the Evidence Code unless otherwise indicated.

4

for the strike; two years for two of the prison priors; and a five-year enhancement for the prior serious felony conviction.

DISCUSSION

Merchant raises two claims of evidentiary error. First, he argues Lisa's hearsay statements to law enforcement were admitted in violation of his constitutional right to confront adverse witnesses. Second, he challenges the admission of prior domestic violence evidence. We find no error as to either claim.

1.      *Lisa's Hearsay Statements Were Properly Admitted.*

With Lisa unavailable, her hearsay statements to the responding highway patrol officer were central to the prosecution's case. In addition, the prosecution relied on law enforcement witnesses to describe Lisa's past domestic violence reports. This evidence was admitted under the forfeiture-by-wrongdoing exception to Merchant's Sixth Amendment right to confrontation.

Merchant argues the court erred in applying the forfeiture-by-wrongdoing doctrine. He claims his actions in exhorting Lisa not to come to court fell short of the "wrongdoing" required to trigger the exception. Although he may have attempted to make Lisa feel guilty about attending trial, Merchant contends he did not threaten her in any of the jail calls. He further maintains that jail calls to Lisa made 16 months before trial were too remote in time to permit a nonspeculative inference that those calls secured Lisa's unavailability. We disagree. Because substantial evidence supports the court's finding that Merchant engaged in wrongdoing designed to prevent Lisa from testifying at

5

trial, admitting Lisa's statements to law enforcement did not violate Merchant's constitutional right to confront her.

a.    *Legal Principles*

A criminal defendant has a Sixth Amendment right "to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) A court may not admit a witness's testimonial hearsay statements against a defendant unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. (*Crawford v. Washington* (2004) 541 U.S. 36, 53−54.) Nonetheless, in narrow circumstances a defendant may forfeit his right to confrontation by his own wrongdoing. (*Id.* at p. 62; *Davis v. Washington* (2006) 547 U.S. 813, 833 (*Davis*).) "[W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system." (*Davis*, at p. 833.) For the forfeiture-by-wrongdoing exception to apply, a defendant must have engaged in wrongful conduct *designed* to prevent a witness from testifying. (*Giles v. California* (2008) 554 U.S. 353, 359−361, 368, 377 (*Giles II*).) Said differently, a defendant must "engag[e] in wrongdoing that renders the declarant unavailable with an intent to prevent that declarant's in-court testimony." (*People v. Perez* (2018) 4 Cal.5th 421, 455, fn. 3.)

"Wrongdoing" need not rise to the level of murder. (*People v. Jones* (2012) 207 Cal.App.4th 1392, 1399 (*Jones*).) "The common-law forfeiture rule was aimed at removing the otherwise powerful incentive for defendants to intimidate, bribe, and kill

the witnesses against them—in other words, it is grounded in 'the ability of courts to protect the integrity of their proceedings.' " (*Giles II*, *supra*, 554 U.S. at p. 374.) Thus in *Jones*, the defendant forfeited his right to confrontation when during phone calls from jail he dissuaded his ex-girlfriend from testifying by implying he had friends on the outside available to do "whatever [was] necessary." (*Jones*, at pp. 1398−1399.)

The Supreme Court declined in *Davis* to decide what *procedure* courts must follow to find forfeiture by wrongdoing. (*Davis*, *supra*, 547 U.S. at p. 833.) But it observed that federal courts generally utilize a preponderance-of-the-evidence standard when applying a parallel hearsay exception. (*Ibid*.) California courts have since adopted a preponderance standard for evaluating forfeiture by wrongdoing. (*People v. Giles* (2007) 40 Cal.4th 833, 853 (*Giles I*), overruled on other grounds in *Giles II*, *supra*, 554 U.S. 353, 365; *People v. Banos* (2009) 178 Cal.App.4th 483, 503, fn. 12.)[2] We evaluate whether there is sufficient evidence from which the trial court could make its finding on a preponderance standard. (See *People v. Kerley* (2018) 23 Cal.App.5th 513, 559 (*Kerley*).)

_____

[2]    Apart from the Confrontation Clause, normal restrictions on hearsay evidence apply. (*Giles I*, *supra*, 40 Cal.4th at p. 854.) Section 1370, subdivision (a) provides a hearsay exception for an unavailable domestic violence victim's reliable out-of-court statements to law enforcement describing the infliction of physical injury. Since 2011 (Stats. 2010, ch. 537, § 2), section 1390, subdivision (a) additionally provides a hearsay exception for forfeiture by wrongdoing: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement is offered against a party that has engaged, or aided and abetted, in the wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." The party seeking to admit evidence under this exception must establish its elements by a preponderance of the evidence at a foundational hearing. (§ 1390, subd. (b).)

7

b.     *Application*

Before trial, the prosecution filed a motion seeking to admit Lisa's out-of-court statements to law enforcement. It proffered her statements to officers on December 22, 2014 describing the charged offense as well as her statements to officers earlier that year describing domestic violence incidents on March 8 and November 21. According to the prosecution, Merchant's statements to Lisa during recorded jail calls supported application of the forfeiture-by-wrongdoing doctrine.

The court determined Lisa's statements were testimonial in nature, implicating Merchant's right to confrontation.[3] Nevertheless, reviewing Merchant's recorded jail calls, it determined he intentionally secured Lisa's unavailability at trial and thereby forfeited his confrontation right. The judge acknowledged the case was "a lot weaker" than the usual forfeiture by wrongdoing case because Lisa was not killed or expressly threatened with harm to make her stay away. Merchant instead engaged in "more of a passive coercion." Yet there was enough evidence from the jail calls and Merchant's pattern of abuse to find by a preponderance that his actions intended to and succeeded in keeping Lisa away.

Sufficient evidence supports the trial court's finding. A criminal protective order was entered two days after the offense on December 24, 2014, precluding Merchant from any contact with Lisa. On January 6, Merchant called his friends "Groove," "Buck," and

---

[3]     The People do not dispute that finding, and we accept without deciding that Lisa's statements to law enforcement on March 8, November 21, and December 22 were testimonial.

8

"Snake." Groove said the D.A. was in the area searching for Lisa. Buck told Merchant, "As long as she don't come in to court you could be all right." Merchant asked Groove or Snake to check in on Lisa and "keep her away for six months." Groove agreed.

On January 7, Merchant called Lisa. He told her the D.A. had offered him 15 years, but if he proceeded to trial he faced 28. He claimed his counsel recommended that Lisa "stay away for six months." Merchant said he was "scared to fuckin' go to trial 'cause if you pop up, I'm gone, like no ifs, ands, and buts - my life is gone." He told her he had asked Buck to "[g]o over there and tell my girl what's up." Although Buck had purportedly told him that Lisa would not show up, Merchant said he needed to hear it from her directly. He pressed Lisa, "you know I didn't kidnap[] you babe. You know what I'm sayin'? You know that, babe. You hear me?" and told her how stressed he was that someone could find her. Merchant told Lisa not to write him letters because she might be located. Finally, Lisa acquiesced: "Okay. I'm not." [¶] . . . [¶] "I'm not goin' over, babe. I'm with you." "Don't worry about it," she assured him, "I'm [sticking] by your side." Merchant expressed relief and thanked her. He asked, "so you want me to go through with the trial?" Lisa replied, "Yeah. 'Cause I'm not going to babe." The couple exchanged "I love you['s]" and ended the call.

Merchant called later that day to remind Lisa to stay under the radar. He told her he knew she would be there for him and reconfirmed whether he should "[g]o all the way to trial with this?" Lisa again assured him that she was not going anywhere. Merchant seemed satisfied. The call ended shortly after with an exchange of "I love you['s]."

9

On January 8, Merchant called Lisa to say the D.A. would have to drop charges if she did not appear for two months. Lisa assured Merchant that she was hiding from the D.A., and not to worry. Seemingly placated, Merchant instructed her to stay by the phone.

The next day, Merchant called and told Lisa not to leave the house without telling him. He told her he felt stressed, but his "homie" told him to calm down because Lisa wasn't going anywhere and had just been "talkin' good." Lisa told him, "calm down 'cause I ain't going nowhere"; Merchant emphasized that she needed to "lay low." Later that day, he called Lisa again and convinced her not to leave the house, even for a job interview. Two hours later, Merchant called to warn Lisa not to invite guests over.

On January 10, Lisa told Merchant she caught Snake staring at her when she went to the store. Merchant explained that Snake was just worried that Lisa would show up, and she should reassure him otherwise.

In all, Merchant called Lisa 167 times between January and May 2015. Although he made no direct threat to harm her, Lisa's friend told the district attorney's office weeks before trial that Lisa remained terrified of what might happen to her if she came to court. Sufficient evidence supports the court's finding that Merchant engaged in wrongdoing designed to prevent Lisa from testifying. Through obsessive, repeated calls, he begged Lisa to lay low, stay at home, and not invite company, venture out, or write correspondence. He told her charges would be dismissed if she evaded detection, whereas his life would be over if she came forward. Lisa was made aware that though he was incarcerated, Merchant had friends on the outside watching her. When she

10

equivocated that she was *trying* to stick by him, Merchant immediately responded, "You better. What the fuck you mean, you're trying to? You better." Gratitude and expressions of love followed each time Lisa promised not to appear. In the context of an abusive relationship with its dynamics of control, the trial court could reasonably find that Merchant intended to, and did, secure Lisa's nonappearance.

*Jones*, *supra*, 207 Cal.App.4th 1392 is analogous. There, the defendant was on trial for choking someone who told his ex-girlfriend that he was seeing another woman. The ex-girlfriend told detectives that she had ended her five-year relationship with the defendant because of physical violence, and that on the date of the charged offense, he had called her with the victim's cell phone to say, " 'I just choked your homegirl out and I have her phone.' " (*Id.* at pp. 1395−1396.) The ex-girlfriend failed to appear at trial, and jail records showed the defendant had called her a dozen times to dissuade her from testifying. (*Id.* at p. 1396.) Based on these calls, the trial court properly applied the forfeiture-by-wrongdoing doctrine to admit the ex-girlfriend's statements to detectives. As the court explained, applying the doctrine on these facts advanced its objective of helping courts maintain the integrity of judicial proceedings and removing incentives for defendants to intimidate, bribe, or kill witnesses who might appear against them. (*Id.* at p. 1399.)

Merchant attempts to distinguish *Jones*, arguing his jail calls to Lisa were more remote in time and did not so clearly cause her failure to appear. According to Merchant, "[t]here is an extremely significant difference from contacting a witness and discouraging [her] attendance at trial one week before trial, as in *Jones*, and in doing so nearly a year

11

and a half prior to trial, as in this case." But while there may be a distinction, it is not as stark as Merchant suggests. Merchant made 167 calls over a five-month period soon after his arrest, locking in Lisa's nonappearance before he decided to reject the plea offer. Viewed in context of an abusive relationship, his pleading, cajoling, and careful monitoring of Lisa's whereabouts could reasonably be taken as a threat to induce her nonappearance at trial a year later. According to Lisa's friend, who spoke with a D.A. investigator just two weeks before trial, Lisa remained "terrified" to come forward.

The facts are sufficiently analogous to *Jones* to justify the same outcome under a preponderance-of-the-evidence standard. There was no error in applying forfeiture by wrongdoing, and admitting Lisa's statements to law enforcement at trial did not violate Merchant's constitutional right to confront her.

2.     *The Trial Court Did Not Err in Admitting Merchant's Prior Acts of Domestic Violence.*

Merchant contends the trial court abused its discretion in admitting evidence of prior acts of domestic violence against Lisa and former girlfriend J.C. under sections 1109 and 1101, subdivision (b). Among other claims, he argues the prior act evidence should have been excluded under section 352.

a.     *Additional Background*

Merchant had an on-and-off relationship with J.C. starting in 2005; their daughter was born in November 2013. He began dating Lisa in January 2014, 11 months before being charged in this case. Prior to trial, the prosecution filed a motion in limine to admit Merchant's prior acts of physical violence against Lisa and J.C. According to the

prosecution, the 11 prior acts against the women and a twelfth act against Merchant's stepfather tended to show Merchant's propensity to commit domestic violence under section 1109, and/or shed light on his intent or common plan as to the charged crimes under section 1101, subdivision (b). Merchant objected to the entirety of the prior act evidence. The court addressed each piece of evidence individually, admitting only eight of the 12. It excluded the remaining evidence as minimally relevant or cumulative.

Specifically, the court found two prior acts involving Lisa admissible:

- On March 8, 2014, Merchant was upset that Lisa was not ready for bed and pushed her several times in the face and chest. Charges for this incident were separately pending at trial. The trial court found this evidence admissible under section 1109 to show propensity and concluded that because Lisa would not testify, its presentation would consume little time for purposes of section 352.

- On November 21, 2014, Lisa and Merchant got into an argument while she was driving a vehicle. He punched her in the side of the head and pulled her hair. When she stopped for gas, he drove away and left her stranded. Charges for this incident were separately pending at trial. This evidence was found admissible under section 1109. In addition, given the similarities to the charges, it was admissible to show that Merchant acted pursuant to a common plan and not by mistake or accident under section 1101, subdivision (b). Section 352 did not require exclusion given the high probative value and minimal consumption of time.

Likewise, the court found six events concerning J.C. admissible:

- In April or May 2008, while J.C. was driving on the freeway with Merchant in the passenger seat, he punched her in the stomach and shoulder and threw her cell phone in the back seat. When J.C. stopped the car, he retrieved the phone, called a friend, and said he wanted to kill J.C. but did not want to go to jail. He then threatened J.C. that he could kill her if he wanted and proceeded to throw her cell phone outside the car. This court found this evidence admissible to show propensity under section 1109 and common plan and intent under section 1101, subdivision (b).

- On an unspecified date, Merchant asked J.C. to perform a sexual act. She refused and wanted to go home. Merchant prevented her from leaving, pushing her onto

13

the bed.  As she reached across the bed for her phone to call the police, he grabbed her hard by the hair and threatened to shoot her.  The court found this evidence admissible to show propensity under section 1109 and intent under section 1101, subdivision (b).

- On August 11, 2008, Merchant pushed J.C. and hit her in the ear and thigh.  When she stepped outside to leave, he grabbed her belongings and took them inside.  She tried to retrieve them, but Merchant kicked her.  This evidence was admissible to show propensity under section 1109 and intent under section 1101, subdivision (b).

- On July 25, 2009, while Merchant was driving on the freeway, J.C. tried to end their relationship.  Merchant punched her and refused to take her home.  He instead drove J.C. to his house and took away her keys to prevent her from leaving.  J.C. eventually managed to grab her keys and leave.  This evidence was admissible under section 1109 and under 1101, subdivision (b) to show common plan and intent.

- Merchant called J.C. nearly 100 times over a two-week period in November 2010, in violation of a criminal protective order.  When J.C. asked to be left alone, Merchant threatened that they would remain together "til death."  This evidence was admissible under section 1109 and under 1101, subdivision (b) to show common plan and intent.  Section 352 narrowed how this "100 calls" evidence could be presented.  As the trial court explained:  "The fact that it happened over a hundred times is one thing.  But the fact that all the calls are played would be another."

- In May 2011, Merchant pleaded guilty to false imprisonment of J.C. in connection with the July 25, 2009 incident.  This evidence was admissible under section 1109 to show propensity and under section 1101, subdivision (b) to show common plan and intent.

By contrast, the court excluded the following four acts as minimally probative or cumulative:

- In early 2008, when J.C. tried to break up with Merchant, he became angry and would not let her leave.  He grabbed her necklace and broke it.  When J.C. got in her car to drive away, Merchant threw a jewelry box at the car, damaging the rear tail light.  This evidence was inadmissible under sections 1109 and 1101, subdivision (b) because the extent of physical violence was "minimally relevant."  The court also excluded it under section 352 explaining, "there's a cumulative nature to these," and "[a]t some point, the number of incidents becomes . . . more prejudicial than probative."

14

- In August 2009, Merchant threatened J.C., who was then on probation, that he could make her life miserable and put her back in jail. The court found this inadmissible under sections 1109 and 1101, subdivision (b) because "there's no physical violence," and the evidence did not tend to show a common plan. It also found the evidence cumulative under section 352.

- In 2011, while awaiting trial in another case, Merchant relentlessly called J.C. and threatened to hurt her unless she sent him nude pictures. Once she did so, he threatened to share the pictures with her family and coworkers, stating he wasn't going to jail for no bitch. The court deemed this evidence cumulative under section 352, since it was encompassed within the "100 calls" evidence admitted above. And to the extent it was offered just to show that Merchant had made threats, it was inadmissible under sections 1109 or 1101, subdivision (b).

- In January 2006, Merchant threatened his stepfather at gunpoint not to touch his property. He was convicted for criminal threats and imprisoned for four years, eight months. This was inadmissible under section 1109 and minimally relevant for a noncharacter purpose under section 1101, subdivision (b) because the victim was not in a dating relationship with Merchant.

b.    *Legal Principles*

Character evidence is generally inadmissible to prove a defendant's conduct on a specific occasion. (§ 1101, subd. (a).) But specific acts of prior misconduct may be offered for a noncharacter purpose, such as to show intent, common plan, or identity. (§ 1101, subd. (b).) When other act evidence is introduced under section 1101, subdivision (b), the degree of similarity required with the charged offense depends on the purpose for which it is offered. (*People v. Gutierrez* (2018) 20 Cal.App.5th 847, 859 (*Gutierrez*).) "The least degree of similarity between the uncharged act and the charged offense is required to support a rational inference of intent; a greater degree of similarity is required for common design or plan; the greatest degree of similarity is required for identity." (*Ibid.*; see *People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).)

15

In addition, the Legislature has carved out specific exceptions to the ban on propensity evidence for defendants charged with sex crimes (§ 1108, subd. (a)) and domestic violence (§ 1109, subd. (a)).  Subject to conditions not relevant here, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a)(1).)  The statute reflects the Legislature's determination that in domestic violence cases, similar prior offenses are uniquely probative of a defendant's guilt on a later occasion.  (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532 (*Johnson*).)  "Domestic violence" includes abuse against a girlfriend or former girlfriend. (§ 1109, subd. (d)(3); Pen. Code, 13700, subd. (b).)

Even if other act evidence is relevant and admissible under section 1101, subdivision (b) or section 1109, it must be excluded under section 352 where its probative value is substantially outweighed by the probability that its admission will consume too much time, cause undue prejudice, confuse the issues, or mislead the jury. (§§ 352, 1109, subd. (a)(1); *People v. Foster* (2010) 50 Cal.4th 1301, 1331.)  The prejudice that section 352 is designed to avoid is not the damage that naturally results from highly probative evidence, but rather the prospect of leading the jury to prejudge a person or focus on extraneous factors.  (*People v. Tran* (2011) 51 Cal.4th 1040, 1048.)  We review the admission of other act evidence for abuse of discretion.  (*Gutierrez*, *supra*, 20 Cal.App.5th at p. 860; *Johnson*, *supra*, 185 Cal.App.4th at p. 531.)

16

c.  *Analysis*

We readily conclude that the trial court did not err in admitting eight items of other act evidence under sections 1109 and 1101, subdivision (b).  Merchant was accused of kidnapping Lisa, inflicting physical abuse, dissuading her from seeking assistance, and robbing her during the chaotic car ride.  Prior act evidence admitted by the court was highly probative because it shared broad similarities with the charged conduct.  Three of the prior acts involved Merchant hitting or punching his then-girlfriend in a moving vehicle.  Two involved Merchant preventing J.C. from using her cell phone to call for help.  In three instances, Merchant prevented J.C. from leaving or grabbed her belongings as she tried to leave.  Two prior acts showed Merchant's propensity for engaging in physical violence against Lisa, the victim in this case.  That Merchant incessantly called J.C. from jail in violation of a criminal protective order bolstered evidence at trial that he had done the same to Lisa.  None of the prior acts occurred more than 10 years before the charged offenses.  (§ 1109, subd. (e).)

Taken together, the prior act evidence demonstrated Merchant's pattern of control in romantic relationships.  He tended to convert verbal disagreements with his girlfriend into physical abuse, inflict physical violence (including in a moving vehicle), prevent her from leaving, and block her attempts to call for help.  This pattern was highly probative of his propensity to engage in similar conduct on December 22 as charged.  (§ 1109, subd. (a).)  It was also highly probative of his intent (lack of mistake) and common plan

17

or pattern of behavior in committing the charged offenses. (§ 1101, subd. (b).)[4] Given the nature of the evidence, the court reasonably found that the probative value of admission outweighed its prejudicial effect. (§ 352.)

It is significant that the court excluded four items of prior act evidence. In three of the excluded incidents, Merchant merely threatened J.C. or caused property damage. The extent of physical violence in these incidents was found minimally probative to the case. The court further reasoned that at some point, domestic violence evidence concerning J.C. became cumulative and more prejudicial than probative. It excluded Merchant's criminal threat against his stepfather—the victim was not someone Merchant had dated, and the act was minimally probative of his intent or common plan.

As we read the record, the trial court carefully weighed relevant factors to admit acts that bore a reasonable similarity to the charged offenses and exclude those deemed cumulative or minimally probative. The admitted domestic violence evidence was highly probative and not *unduly* prejudicial, as it did not invite the jury to prejudge Merchant or consider extraneous factors. Merchant complains of the "sheer volume of incidents

---

4       Merchant claims there is insufficient overlap between the prior acts and the charged offenses to show intent or common plan under section 1101, subdivision (b). But exact overlap is not required for these purposes. The least degree of similarity is required to show intent; all that is needed is sufficient similarity to support the inference that the defendant probably harbored the same intent in each instance. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) Although a greater degree of similarity is required to show a common design or plan, this too requires only enough common features to suggest the existence of a general pattern or scheme rather than a series of spontaneous acts. (*Id.* at p. 403.) The design or plan so revealed "need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense." (*Ibid.*) Those standards were satisfied here as to evidence admitted under section 1101, subdivision (b).

introduced," but the court's decision to admit eight out of 12 items, rather than just five or three fell squarely within its purview. (See, e.g., *Kerley*, *supra*, 23 Cal.App.5th at p. 536 ["it is the frequency, regularity, and severity with which [the defendant] beat [the victim] that infuses this propensity evidence with probative strength"].) Simply put, we cannot say the court abused the discretion it so clearly exercised.

We reject each of Merchant's arguments to the contrary. He claims the incidents involving J.C. had no probative value. But the fact that Merchant engaged in domestic violence against two different women *strengthens* its probative value on propensity. (*People v. Morton* (2008) 159 Cal.App.4th 239, 247.) Courts have consistently rejected his next claim—that the admission of propensity evidence under section 1109 violates due process. (*People v. Johnson* (2000) 77 Cal.App.4th 410, 419; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1334; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1096; *People v. Cabrera* (2007) 152 Cal.App.4th 695, 704.) Proper application of section 1101, subdivision (b) likewise does not implicate due process. (*People v. Thompson* (2016) 1 Cal.5th 1043, 1116.)[5]

Merchant argues the instruction on propensity evidence invited the jury to convict him under a lower standard of proof. The jury was told to evaluate whether prior acts of domestic violence occurred under a preponderance standard. The instruction explained that a finding that abuse occurred was a single factor to consider and insufficient standing

---

5    Merchant does not explain how admitting prior act evidence under section 1101, subdivision (b) implicated his right to equal protection, and we do not address that unsupported claim.

19

alone to prove guilt. It also made clear that even if past domestic violence occurred, the prosecution still had to prove each charge and allegation beyond a reasonable doubt. (Former CALCRIM No. 852, now CALCRIM No. 852A.)[6] As Merchant concedes, courts have consistently rejected the claim he makes. (*People v. Reyes* (2008) 160 Cal.App.4th 246, 250−253; *Kerley*, *supra*, 23 Cal.App.5th at p. 543.)

Finally, Merchant argues his 2011 conviction for false imprisonment was inadmissible under section 1109 because it was not a qualifying act of domestic violence. Domestic violence includes "abuse" directed against a girlfriend, which in turn "means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (Pen. Code, § 13700, subds. (a)−(b).) The 2011 conviction stemmed from a July 2009 incident in which Merchant punched J.C. while driving on the freeway, refused to take her home, and prevented her from leaving when they reached his house. This qualified as domestic violence because his acts placed J.C. in reasonable apprehension of serious bodily injury. (See *People v. James* (2010) 191 Cal.App.4th 478, 483 [burglary with intent to commit domestic violence was admissible under section 1109; when defendant broke down his girlfriend's door and threatened her, he placed her

---

6       Defense counsel further clarified the standard during closing argument: "And as the instruction states, just because you find by a preponderance of the evidence some prior abuse occurred does not by itself prove that what happened here actually occurred beyond a reasonable doubt. Because you still must find that what he's charged with, which is what happened on December 22nd, 2014, actually occurred beyond a reasonable doubt."

in reasonable apprehension of serious bodily harm].)  Our conclusion does not turn on whether there was evidence "about how J.C. felt" during the incident.

3.　　　*Sufficiency of the Evidence*

Merchant makes a two-sentence argument that his convictions must be reversed for insufficient evidence.  This contention turns entirely on his two claims of evidentiary error.  Absent improperly admitted hearsay and propensity evidence, Merchant maintains there is insufficient evidence to sustain the convictions.  Because we find no error in the admission of Lisa's unconfronted statements, or in the admission of prior domestic violence evidence, we likewise reject his insufficiency-of-the-evidence claim.

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

21