# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-1177

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Tony E. Emery, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 11, 1999

Filed: July 30, 1999

_____

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
WATERS,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury convicted Tony Emery of killing a federal informant, see 18 U.S.C.
§ 1512(a)(1)(C). The victim was Christine Elkins, who had been cooperating with

_____

[1] The Honorable H. Franklin Waters, United States District Judge for the Western
District of Arkansas, sitting by designation.

federal officials in an investigation of Mr. Emery's drug trafficking activities. The trial court[2] sentenced Mr. Emery to life imprisonment without parole and fined him $25,000. Mr. Emery appeals his conviction, and we affirm.

## I.

Mr. Emery contends that the indictment under which he was tried was barred by the statute of limitations. Although it is true that a five-year statute of limitations applies to non-capital federal crimes unless some other statute specifically provides otherwise, see 18 U.S.C. § 3282, no such limitation applies to capital crimes, see 18 U.S.C. § 3281. Mr. Emery argues, however, that when 18 U.S.C. § 1512 was enacted in 1986, capital punishment had been prohibited by Furman v. Georgia, 408 U.S. 238 (1972) (per curiam). Congress could not therefore have intended, the argument goes, for killing a federal witness to be a capital crime exempt from the five-year statute of limitations.

There are a number of infirmities with this argument, but we believe that it suffices to observe that a plain reading of the statutory language dictates a different result. The penalty section of § 1512, as it existed in 1990 (the time of the crime), see § 1512(a)(2)(A), explicitly incorporated the sentencing provisions of 18 U.S.C. § 1111, which has always permitted the death penalty to be a punishment for first-degree murder. The indictment and the verdict director form in this case included all of the elements of first-degree murder, and the jury found that the prosecution proved these elements beyond a reasonable doubt. The crime Mr. Emery was indicted and convicted for was therefore a capital crime, to which no statute of limitations applies.

---

[2]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

## II.

Mr. Emery maintains that § 1512 is unconstitutional because it seeks to regulate an activity that is beyond the scope of commerce, and includes no jurisdictional element that would ensure a case-by-case analysis of the relationship between the activity regulated and the flow of interstate commerce as required by United States v. Lopez, 514 U.S. 549, 561 (1995). Alternatively, he asserts that, applying such a case-by-case analysis, no federal jurisdiction existed in this case because in the circumstances interstate commerce was not sufficiently affected. Finally, Mr. Emery contends that the indictment was flawed because it failed to state that his activities affected interstate commerce.

Mr. Emery's arguments are without merit, because the statute in question does not derive its authority from Congress's authority over interstate commerce, but from Congress's power to maintain the integrity of federal proceedings and investigations. See United States v. Veal, 153 F.3d 1233, 1247-51 (11th Cir. 1998), cert. denied, 119 S. Ct. 2024 (1999). Thus, neither the constitutionality of the statute, the jurisdiction of the federal court, nor the sufficiency of the indictment depends on the effects of the proscribed acts on interstate commerce.

## III.

An essential element of the crime charged is that a defendant intend to prevent communication with federal officials, see 18 U.S.C. § 1512(a)(1)(C). Mr. Emery contends that this element requires proof that he knew that a federal investigation was under way, or knew that his crime was a federal one that raised the possibility of a federal investigation. He asserts that the indictment failed to allege this necessary state of mind, that there was insufficient evidence to prove this element, and that the relevant jury instruction failed to inform the jury that such knowledge was required for conviction.

In support of his position, Mr. Emery relies on United States v. Stansfield, 101 F.3d 909, 918 (3d Cir. 1996) (Stansfield I), which contained the statement that the prosecution must prove that a "defendant believed that the [victim] might communicate with the federal authorities." Subsequent cases in the Third Circuit, however, have made it clear that a defendant need not know either that there is a federal investigation or that such an investigation is possible due to the federal nature of the crime. In United States v. Bell, 113 F.3d 1345, 1349 (3rd Cir. 1997), cert. denied, 118 S. Ct. 447 (1997), the court held that the statute did not require proof "that the defendant believed the victim might communicate with law enforcement officers whom the defendant knew or believed to be federal officers," but, instead, only that "the officers with whom the defendant believed the victim might communicate [were in fact] federal officers."

We believe that Bell, and other similar cases, see, e.g., United States v. Stansfield, 171 F.3d 806, 816 (3rd Cir. 1999) (Stansfield II), have properly interpreted § 1512, which specifically provides that "no state of mind need be proved" with respect to whether "the law enforcement officer is an officer or employee of the Federal Government," see 18 U.S.C. § 1512(f)(2). It is sufficient for conviction that the victim was actually cooperating in a federal investigation or in the investigation of a federal crime, and that at least some part of a defendant's motive in killing that victim was to halt that cooperation. See Bell, 113 F.3d at 1349. The indictment and the relevant jury instruction quite properly stated these requirements.

We believe, moreover, that on this record a reasonable jury could conclude that Ms. Elkins was cooperating with an agent of the federal Bureau of Alcohol, Tobacco, and Firearms (BATF), and that some part of Mr. Emery's motivation for killing her was to stop this cooperation. Ms. Elkins gave the BATF agent substantial information about Mr. Emery's activities that constituted federal crimes, agreed to testify if necessary, and attempted to record conversations with Mr. Emery about drug trafficking on a micro-cassette recorder provided by the BATF agent. During the planned meeting to which Ms. Elkins wore the recorder, Mr. Emery became aware of

the presence of the BATF agent and a state officer, approached their vehicle, squatted down directly in front of the vehicle, and stared at the officers.

Ms. Elkins later told the BATF agent that Mr. Emery accused her of cooperating with law enforcement, and threatened her for doing so. Just a few days later Ms. Elkins was dead and there was substantial proof that Mr. Emery participated in killing her. We believe therefore that there was sufficient evidence to support a conclusion that at least part of Mr. Emery's motive for killing Ms. Elkins was to stop her cooperation with the BATF agent.

IV.

Mr. Emery asserts that the admission of several hearsay statements of Ms. Elkins violated Fed. R. Evid. 403 and Fed. R. Evid. 802, as well as his right to be confronted with the witnesses against him, as guaranteed by the Sixth Amendment. We note, first, that it is well established that a defendant's misconduct may work a forfeiture of his or her constitutional right of confrontation, see Illinois v. Allen, 397 U.S. 337, 343 (1970), and that the right of confrontation is forfeited with respect to any witness or potential witness whose absence a defendant wrongfully procures. See United States v. Carlson, 547 F.2d 1346, 1359 (8th Cir. 1976), cert. denied, 431 U.S. 914 (1977); see also, e.g., United States v. White, 116 F.3d 903, 911 (D.C. Cir. 1997) (per curiam), cert. denied, 118 S. Ct. 390, 391 (1997), and United States v. Houlihan, 92 F.3d 1271, 1279-80 (1st Cir. 1996), cert. denied, 519 U.S. 1118 (1997). Hearsay objections are similarly forfeited under Fed. R. Evid. 804(b)(6), which excludes from the prohibition on hearsay any "statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."

Mr. Emery contends that these principles should apply only in a trial on the underlying crimes about which he feared Ms. Elkins would testify, not in a trial for murdering her. We believe that both the plain meaning of Fed. R. Evid. 804(b)(6) and

the manifest object of the principles just outlined mandate a different result. The rule contains no limitation on the subject matter of the statements that it exempts from the prohibition on hearsay evidence. Instead, it establishes the general proposition that a defendant may not benefit from his or her wrongful prevention of future testimony from a witness or potential witness. Accepting Mr. Emery's position would allow him to do just that.

Mr. Emery also disputes the procedure that the trial court used to admit this hearsay evidence. He contends that the trial court should have held a preliminary hearing outside the presence of the jury, at which the prosecution would have had to prove by clear and convincing evidence that Mr. Emery procured Ms. Elkins's unavailability. The trial court, instead, admitted the evidence at trial in the presence of the jury contingent upon proof of the underlying murder by a preponderance of the evidence. In doing so, the trial court followed cases dealing with the hearsay statements of co-conspirators: In those cases, evidence is admitted conditionally subject to proof by a preponderance of the evidence that the defendant and the declarant were co-conspirators. See United States v.Bell, 573 F.2d 1040, 1044 (8th Cir. 1978).

We agree with the trial court that a procedure adapted from the co-conspirator cases was appropriate in the present context. See White, 116 F.3d at 911-12. In so ruling, we are motivated by the functional similarity of the questions involved and by the fact that the repetition necessarily inherent with a preliminary hearing would amount to a significant waste of judicial resources. See id. at 914-16. The trial court did not therefore err in denying Mr. Emery a preliminary hearing.

The co-conspirator cases also provide guidance with respect to the issue of the relevant standard of proof. Although one federal appellate court has compared the situation in cases like the present one to the admissibility of in-court identifications that follow tainted out-of-court identifications, and has required proof of predicate facts by

clear and convincing evidence, see United States v. Thevis, 665 F.2d 616, 629-30 (5th Cir. 1982), cert. denied, 456 U.S. 1008, 458 U.S. 1109, 459 U.S. 825 (1982), we again follow the model of co-conspirator cases, and thus require proof by a preponderance of the evidence. See Bell, 573 F.2d at 1044. In so deciding, we align ourselves with the majority of circuits that have considered this question. See, e.g., White, 116 F.3d at 912, and Houlihan, 92 F.3d at 1280.

Mr. Emery also contends that the underlying fact that he procured Ms. Elkins's unavailability must be proved independently of the hearsay in question. Assuming arguendo that such independent proof is required, a matter that we are inclined to doubt, the record in this case is replete with proof that Mr. Emery "engaged or acquiesced in wrongdoing that was intended to, and did," procure her unavailability, see Fed. R. Evid. § 804(b)(6). Extensive testimony was offered at trial that Mr. Emery recruited others to help him kill Ms. Elkins, that they discussed the plan for the murder as well as various options for the disposal of the body, that Mr. Emery lured Ms. Elkins into a house and prevented her from leaving while another man beat her, that Mr. Emery beat her in the head with a flashlight while another man held her, and that Mr. Emery disposed of her body by sinking her and her car in the Missouri River. We hold, therefore, that there was sufficient independent proof to meet the preponderance of the evidence standard.

Mr. Emery maintains as well that even if the statements in question can survive hearsay objections, they should have been excluded under Fed. R. Evid. 403 because they presented a threat of unfair prejudice or confusion that substantially outweighed their probative value. The hearsay admitted in this case consisted primarily of Ms. Elkins's statements about Mr. Emery's drug trafficking activities, and her fear that he would retaliate against her for her cooperation with law enforcement authorities. This evidence possessed significant probative value, especially with respect to establishing Mr. Emery's motive, and that probative value was not substantially outweighed by the threat of unfair prejudice or confusion.

V.

Mr. Emery contends that the trial court's jury instructions operated as a constructive amendment to the indictment. A constructive amendment, which is reversible error per se, "occurs when the essential elements of the offense set forth in the indictment are [in effect] altered ... by the prosecutor or the court after the grand jury has passed upon them." United States v. Begnaud, 783 F.2d 144, 147 n.4 (8th Cir. 1986). Jury instructions are usually found to have caused a constructive amendment only if they "in effect allowed the jury to convict the defendant of an offense different from or in addition to the offenses alleged in the indictment." Id. at 147.

In this case, although the indictment alleged only that Mr. Emery killed Ms. Elkins "by beating her to death," the trial court instructed the jury that "two or more persons may kill an individual when they actively participate with each other in a killing, as by jointly assaulting and injuring her in a manner that could result in death, when the assaults are made with the intent to kill, even if you are unable to determine who struck the fatal blow." Mr. Emery contends that by failing to require the jury to find that he himself delivered the fatal blow, the trial court allowed the jury to convict him under a theory of conspiracy or accomplice liability, in addition to the crime charged. We do not believe, however, that the jury instruction increased the number of crimes for which Mr. Emery could be convicted. Instead, we believe that the trial court correctly defined the circumstances under which Mr. Emery could be convicted for the crime charged. No constructive amendment therefore occurred.

Mr. Emery also contends that there was a fatal variance between the facts alleged in the indictment and the evidence offered by the prosecution at trial. A fatal variance "occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment." Begnaud, 783 F.2d at 147 n.4. "Reversal is not

required if the variance is harmless, that is, if 'the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial.' " United States v. Huntsman, 959 F.2d 1429, 1435 (8th Cir. 1992), cert. denied, 506 U.S. 870 (1992), quoting Begnaud, 782 F.2d at 148.

Mr. Emery contends that a fatal variance occurred because the indictment did not include any mention of another person being involved in the beating, whereas the proof at trial did. We believe that, even if this discrepancy amounted to a variance, Mr. Emery suffered no resulting prejudice. In our view, the indictment made Mr. Emery well aware of the fact that he faced the charge of murdering Ms. Elkins, and that he would have to answer for his part in causing her death.

## VI.

For the reasons stated, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.