**FILED**
**June 2, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-1102 – S*tate of West Virginia v. Gerald Jako, Jr.*

Wooton, Justice, dissenting:

The Confrontation Clause set forth in the Sixth Amendment to the United States Constitution and article III, section 14 of the West Virginia Constitution *guarantees* an accused the right to confront and cross-examine witnesses.[1] This constitutional right is of critical importance, yet the majority finds that the petitioner, Gerald Jako, forfeited it by engaging in wrongdoing that was intended to prevent his girlfriend and co-defendant, Samantha England, from testifying against him at trial. *See* Syl. Pt. 11, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006)("Under the doctrine of forfeiture, an accused who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.").[2]  In so holding, the majority embarks on a steady path of erosion of the

---

[1] In the United States Constitution the Sixth Amendment provides: "In all criminal prosecutions, the accused shall . . . be confronted with the witnesses against him[.]" Likewise, the Confrontation Clause contained in the article III, section 14 of the West Virginia Constitution provides that in "[t]rials of crimes, and misdemeanors . . . the accused shall be . . . confronted with the witness against him[.]"

[2] In two new syllabus points the majority modifies the holding in *Mechling* to include an additional element that an accused must engage in wrongdoing with the *intent* to obtain the absence of a witness.  In this regard, the majority holds in syllabus points four and five:

> Before a circuit court may admit an out-of-court testimonial statement under the common law, forfeiture-by-wrong doing doctrine, codified in Rule 804(b)(6) of the West Virginia Rules of Evidence (2014), the court must find by a preponderance of the evidence that the defendant (1) acted wrongfully, or acquiesced to the wrongful actions of another;

Confrontation Clause, broadly applying an evidentiary rule which unquestionably precludes the petitioner's exercise of this most basic constitutional right. Because I strongly disagree that the facts in this case warrant a determination that the petitioner engaged in wrongdoing sufficient to support the forfeiture of his right to confront his accuser, I respectfully dissent.

## I.  The Confrontation Clause

The Confrontation Clause has been described by the United States Supreme Court as a "bedrock procedural guarantee" which "applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004). As the Supreme Court so poignantly stated in *Pointer v. Texas*, 380 U.S. 400 (1965):

> It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case. See, e.g., 5 Wigmore, Evidence s 1367 (3d ed. 1940). The fact that this right appears in the Sixth Amendment of our Bill of Rights reflects the belief of the Framers of those

---

(2) did so with the intent to cause a witness to be unavailable; and (3) actually rendered the witness unavailable.

To the extent that *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006), does not limit application of the forfeiture-by-wronging doctrine to when a defendant engaged in wrongdoing with the intent to obtain the absence of a witness, as required under *Giles v. California*, 554 U.S. 353 (2008), that case is modified.

2

liberties and safeguards that confrontation was a fundamental right essential to a fair trial in a criminal prosecution. . . . . This Court in *Kirby v. United States*, 174 U.S. 47, 55, 56, 19 S.Ct. 574, 577, 43 L.Ed. 890 [(1899)], referred to the right of confrontation as '(o)ne of the fundamental guaranties of life and liberty,' and 'a right long deemed so essential for the due protection of life and liberty that it is guarded against legislative and judicial action by provisions in the constitution of the United States and in the constitutions of most, if not of all, the states composing the Union.' Mr. Justice Stone, writing for the Court in *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 [(1931)], declared that the right of cross-examination is 'one of the safeguards essential to a fair trial.' And in speaking of confrontation and cross-examination this Court said in *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377[(1959)]:

> 'They have ancient roots. They find expression in the Sixth Amendment which provides that in all criminal cases the accused shall enjoy the right 'to be confronted with the witnesses against him.' *This Court has been zealous to protect these rights from erosion*.' 360 U.S., at 496-497, 79 S.Ct., at 1413 (footnote omitted.[).]

*Pointer*, 380 U.S. at 404-05 (emphasis added).

## II.  The Forfeiture by Wrongdoing Doctrine

Notwithstanding the essential importance of this constitutional right, the United States Supreme Court has recognized, going back to the common law, that a defendant can engage in wrongdoing sufficient to forfeit it (hereinafter sometimes referred to as "the forfeiture-by-wrongdoing doctrine").  The issue was first discussed by the Supreme Court in *Reynolds v. United States*, 98 U.S. 145 (1878).  In *Reynolds*, the

3

defendant was charged with bigamy and was found to have kept his second wife away from home so that she could not be served with a subpoena commanding her to testify against him at his trial. *Id*. at 159-60. The trial court permitted the state to introduce testimony from the defendant's second wife taken in a prior trial against him for the same offense. *Id*. at 160.

On appeal, the Supreme Court determined that the defendant had engaged in the wrongful overt act of concealing his wife – the witness against him – to keep her from testifying at trial. The Supreme Court determined that

> [t]he Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.

*Id*. at 158.

The Supreme Court again addressed the forfeiture-by-wrongdoing doctrine in *Davis v. Washington*, 547 U.S. 813 (2006), with the late Justice Antonin Scalia writing for the majority. The *Davis* decision involved two different domestic violence cases. In

4

the first, the defendant was charged with a felony violation of a domestic no-contact order and the victim, the defendant's girlfriend, failed to appear as a witness against him at trial. *Id*. at 818-19. The State sought to introduce a 911 recording of the conversation between the victim and the operator in which the victim was calling to report domestic violence. The victim reported that that defendant Davis was beating on her with his fists. *Id*. at 818. The defendant objected to the admission of this evidence based on his confrontation right. The trial court admitted the recording over objection and the defendant was convicted. His conviction was affirmed on appeal to the Supreme Court of Washington and the Supreme Court granted certiorari. *Id*. at 819.

In the second case, police responded to a domestic violence call between a husband and wife. One of the police officers had the wife complete and sign a battery affidavit wherein she handwrote the following statement: "'Broke our Furnace & shoved me down on the floor into the broken glass. Hit me in the chest and threw me down. Broke our lamps & phone. Tore up my van where I couldn't leave the house. Attacked my daughter.'" *Id*. at 820. The husband was charged with domestic battery and violating his probation. As was the factual situation in the first case discussed *supra*, the defendant's wife did not attend his bench trial. The trial court allowed the evidence of the wife's battery affidavit to be admitted into evidence over the husband's objection, and he was convicted. The conviction was affirmed on appeal by the Indiana appellate courts. The Supreme Court granted certiorari. *Id*. at 821.

The focus of the Supreme Court in *Davis* was on whether the 911 call or the victim's statement contained in the battery affidavit were "testimonial" and therefore subject to the Confrontation Clause analysis. *Id.* at 817. The respondents raised the forfeiture-by-wrongdoing doctrine only as additional support for why the respective victim's statements were properly admitted at trial. Accordingly, the Supreme Court did not discuss the specifics of the respective defendant's wrongdoing in these cases because that was not the basis for the lower courts' admission of the statements. However, in regard to the argument that domestic violence cases required greater flexibility in the use of testimonial evidence when a witness fails or refuses to testify, the Supreme Court stated:

> This particular type of crime is notoriously susceptible to *intimidation or coercion of the victim to ensure that she does not testify at trial.* When this occurs, the Confrontation Clause gives the criminal a windfall. We may not, however, vitiate constitutional guarantees when they have the effect of allowing the guilty to go free. . . . But when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system. We reiterate what we said in *Crawford*: that "the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds." 541 U.S., at 62, 124 S.Ct. 1354 (citing *Reynolds*, 98 U.S., at 158–159). That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.

547 U.S. at 832-33 (some emphasis added).

Two years after *Davis*, in *Giles v. California*, 554 U.S. 353 (2008), the defendant shot his ex-girlfriend six times, killing her. At trial, the State sought to introduce statements that the murder victim made to police who responded to a domestic violence call about three weeks before the murder. The statements involved the defendant's threats to kill the victim if he found her cheating on him. Over the defendant's objection, the trial court admitted the statements under a California law "that permits admission of out-of-court statements describing the infliction or threat of physical injury on a declarant when the declarant is unavailable to testify at trial and the prior statements are deemed trustworthy." *Id*. at 357 (citing Cal. Evid. Code Ann. § 1370 (West Supp. 2008)).

Justice Scalia, writing for the Supreme Court, once again examined the doctrine of forfeiture by wrongdoing and found that

> [t]he common-law forfeiture rule was aimed at removing the otherwise powerful incentive for defendants to intimidate, bribe, and kill the witnesses against them—in other words, it is grounded in "the ability of courts to protect the integrity of their proceedings." *Davis*, *supra*, at 834, 126 S.Ct. 2266. The boundaries of the doctrine seem to us intelligently fixed so as to avoid a principle repugnant to our constitutional system of trial by jury: that those murder defendants whom the judge considers guilty (after less than a full trial, mind you, and of course before the jury has pronounced guilt) should be deprived of fair-trial rights, lest they benefit from their judge-determined wrong.

554 U.S. at 374 (footnote omitted). The *Giles* Court went on to determine that intent is an element that must be shown for the forfeiture rule to apply: "The manner in which the rule

was applied makes plain that unconfronted testimony would *not* be admitted without a showing *that the defendant intended to prevent a witness from testifying*." *Id*. at 361 (some emphasis added).[3] Because the state courts failed to consider the defendant's intent, finding it "irrelevant to the application of the forfeiture doctrine[,]" the Supreme Court reversed and remanded the case for further proceedings. *Id*. at 377.

It is clear from both the *Davis* and the *Giles* decisions that the Supreme Court was focused on an application of the forfeiture-by-wrongdoing doctrine which balanced protecting the criminal trial system against a defendant's right to confront witnesses. In that regard, the Supreme Court readily acknowledged that a defendant should not benefit from his or her wrongdoing that rises to the level of undermining the judicial process. *See Davis*, 547 U.S. at 832-33. However, the Supreme Court was equally mindful of the real conflict between the need to protect the integrity of the judicial process and the need to protect the essential constitutional right of confrontation. As Justice Scalia so eloquently articulated on this point:

> [T]he guarantee of confrontation is no guarantee at all if it is subject to whatever exceptions courts from time to time consider "fair." It is not the role of courts to extrapolate from the words of the Sixth Amendment to the values behind it, and

---

[3] It is this language, indicating that intent is part of an application of the forfeiture-by-wrongdoing doctrine, which caused the majority to modify the holding of *Mechling*. *See supra* note 2; *see also* W. Va. R. Evid. 804(b)(6) (providing that a statement is not excluded by the hearsay rule where the declarant is unavailable and the statement is "offered against a party that wrongfully caused – or acquiesced in wrongfully causing – the declarant's unavailability as a witness, and did so intending that result.").

then to enforce its guarantees only to the extent they serve (in the courts' views) those underlying values. The Sixth Amendment seeks fairness indeed—but seeks it through very specific means (one of which is confrontation) that were the trial rights of Englishmen. It "does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts." *Crawford* [*v. Washington*, 541 U.S. [36], at 54, 124 S.Ct. 1354.

*Giles*, 554 U.S. at 375-76 (footnote omitted).

### III.  West Virginia's Adoption of the Doctrine

Following *Davis*, this Court was presented with an appeal of a domestic battery conviction where the circuit court allowed the victim's statements to be admitted at trial, over the defendant's objection, because the victim did not appear to testify. *Mechling*, 219 W. Va. at 369-70, 633 S.E.2d at 314-15.  The victim told another witness to the domestic battery, as well as a law enforcement officer, that the defendant hit her in the head and that she had a knot. *Id*. at 370, 633 S.E.2d at 315.  This Court found that victim's statements were improperly admitted against the defendant in violation of the Confrontation Clause as set forth in the Sixth Amendment to the United States Constitution and article III, section 14 of the West Virginia Constitution.  The defendant's conviction was reversed, and the case remanded to the circuit court for further proceedings. *Id*. at 379, 633 S.E.2d at 324.

In reaching this decision, the Court was very mindful of the impact it might have on domestic violence victims. As the Court noted:

> We reach our decision in this case with some hesitation. This Court is painfully aware that domestic violence cases inherently present a combination of circumstances that obstruct, yet simultaneously intensify the need for, successful criminal prosecutions: low victim cooperation and high same-victim recidivism. *See* Tom Lininger, "Prosecuting Batterers after *Crawford*," 91 Va.L.Rev. 747, 768–71 (2005). Frequently, the victims of domestic violence are deeply conflicted about their plight and refuse to seek police intervention, let alone testify at trial. Society commonly expects a victim of domestic violence to call the police. However, empirical data show that most domestic-violence victims do not call the police, and even when the police are called, the outcome is not always positive. May Ann Dutton, "Understanding Women's Responses to Domestic Violence: A Redefinition of Battered Woman Syndrome," 21 Hofstra L.Rev. 1191, 1229 (1993).

*Mechling*, 219 W. Va. at 379, 633 S.E.2d at 324. It was out of this concern only that the Court decided to adopt the forfeiture-by-wrongdoing doctrine, despite the fact that the forfeiture issue was neither raised as an assignment of error nor argued in the briefs submitted to the Court in *Mechling*. Nevertheless, as previously mentioned, the Court held in syllabus point that "[u]nder the doctrine of forfeiture, an accused who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Id*. at 369, 633 S.E.2d at 314, Syl. Pt. 11. In so holding, the Court cautioned:

> The U.S. Supreme Court was not unmindful of this problem in domestic violence prosecutions when it issued *Crawford* and *Davis*, and neither is this Court. Still, the protections provided by the *Constitution* and the Confrontation Clause cannot be sacrificed by the State upon the altar of expediency to achieve

a conviction in a domestic violence case. But those protections may be sacrificed by the accused through a time-tested equitable doctrine: forfeiture.

*Id*. at 380, 633 S.E.2d at 325 (footnote omitted).

Significantly, in its adoption of this doctrine the Court was solely focused on its application in domestic violence cases. As the Court stated:

An accused's coercion or intimidation of a victim of domestic violence so as to trigger forfeiture can take many forms. The most obvious situation is where the accused directly confronts the victim after being charged, and intentionally coerces the victim into changing his or her statement, or simply not testifying. Another likely situation where an accused may trigger forfeiture is when, after being charged, the accused engages in further abuse or intimidation of the victim which is not explicitly intended to alter, but has the effect of altering, the victim's testimony. But,"[b]attered women . . . may perceive danger and imminence differently from men. . . . A subtle gesture or a new method of abuse, insignificant to another person, may create a reasonable fear in a battered woman." *People v. Romero*, 13 Cal.Rptr.2d 332, 336 n.6 (1992) (citation omitted). Hence, the most difficult forfeiture situation for courts to assess will be those circumstances where the victim responds to a batterer's actions that precede the domestic violence charge—that is, where the accused's earlier conduct and threats (statements like "don't you ever call the police or else!") cause the victim to decline to testify, claim a lack of memory, or be absent from the trial.

*In order for forfeiture to be proven in domestic violence actions*, prosecutors, law enforcement officers and courts must secure evidence—possibly from third parties—prior to trial, indicating that these victims are too frightened to testify about the intimidating and coercive character of the accused's actions. If a victim is too scared to testify against the accused, for fear of retribution, the victim will probably also be too scared to testify in any pre-trial forfeiture proceeding.

11

219 W. Va. at 381, 633 S.E.2d at 326 (emphasis added). Other than this discussion of hypothetical facts that *could* support a determination that a defendant by his wrongdoing *could* forfeit his right to confront a victim, the *Mechling* opinion is wholly devoid of any discussion of any facts which would warrant application of the forfeiture-by-wrongdoing doctrine outside the narrow confines of domestic violence. Indeed, given the Court's reversal of the defendant's conviction, there was no analysis or discussion of what conduct by this defendant was – or even could be – sufficient to support a finding of wrongdoing that would warrant forfeiture of his right to confront his accuser.

### IV.  What Conduct Warrants Application of the Doctrine

Consequently, neither *Mechling* nor any case thereafter – until today – has this Court actually applied the forfeiture-by-wrongdoing doctrine to defeat a defendant's confrontation clause objection to admission of evidence. Thus, the instant case is one of first impression for this Court to decide what conduct constitutes wrongdoing by a defendant sufficient to warrant application of the doctrine. It is disconcerting that the majority, having never previously examined the question, so easily decides this question against the petitioner under the fact and circumstances presented here.

The alleged "wrongdoing" at issue in this case arises from recorded phone conversations between the petitioner and his girlfriend/co-defendant, Ms. England. In

those conversations, the petitioner tells Ms. England such things as he had no use for her, that she could "be whatever you want to be as long as it's loyal and honest and true to me[,]" that he would never leave her unless she was disloyal, that she should not be running her mouth – "[i]t's destructive[,]" that he loved her but she was lying, that he wanted her loyalty, and that he wanted a woman he could count on and trust.[4] Critically, these recorded conversations fail to show the petitioner either threatening to harm Ms. England, coercing her, or intimidating her in any way. Moreover, the record was devoid of any evidence of domestic violence or an abusive relationship between the petitioner and Ms. England which could have factored into the determination of any perceived "wrongdoing" by the petitioner regarding Ms. England's decision to decline a plea deal offered by the State.[5] Nonetheless,

---

[4] Closing its eyes to the reality of criminal law at the trial court level, the majority determines that these statements not only support the circuit court's finding that the petitioner "acted with intent to render Ms. England unavailable to testify at trial[,]" but that "he exerted enough power over her to persuade her to abandon a plea deal that earned her a sentencing recommendation from the State, no recommendation for a gun-specific finding, and dismissal of the second count in the indictment."

Quite frankly, it is no wonder that Ms. England backed out of this so-called plea "deal." In the eyes of many defense attorneys, a plea deal that results in a recommended sentence of forty years is no deal at all, although it could be a starting point for plea negotiations – an option within the control of the State, which, for reasons unknown, seems never to have considered the possibility of "sweetening the deal" in exchange for Ms. England's testimony.

[5] Ms. England did not blame the petitioner for her decision. Importantly, the circuit court found her decision not to go forward with the plea deal to be made "knowingly, intelligently, *and without threat of coercion, force, or duress*." The prosecutor spoke with Ms. England, with her counsel present, and when the prosecutor asked Ms. England the leading question of whether she was afraid of the petitioner, she responded, "Oh, definitely." Ms. England never offered details concerning her alleged "fear" of the petitioner, and she never stated that her alleged "fear" was what caused her to change her mind regarding the plea agreement. *See supra* note 4.

despite the narrow application of the forfeiture-by-wrongdoing doctrine espoused (albeit in dicta) in *Mechling*, the majority here expands the doctrine to usurp the petitioner's right to confront his co-defendant based upon comments made by the petitioner to the co-defendant, which lack any indicia of actual or threatened coercion, intimidation, physical harm, or the like, and which did not involve any hint of domestic violence.  This is a gigantic leap far beyond anything intended in *Mechling*, and serves to remind us of Justice Scalia's warning that "the guarantee of confrontation is no guarantee at all if it is subject to whatever exceptions courts from time to time consider 'fair.'" *Giles*, 554 U.S. at 375.

There are very few cases from other jurisdictions in which courts have held the type of conduct displayed by the petitioner herein sufficient to find forfeiture of the right to confront a witness.  The closest is the recent decision issued by the Court of Appeal of California in *People v. Reneaux*, 264 Cal.Rptr.3d 459 (Cal. Ct. App. 2020), *reh'g denied* (July 14, 2020), *review denied* (Aug. 26, 2020), which at its core involved domestic violence.  In *Reneaux*, the defendant was convicted of inflicting corporal injury on his girlfriend, false imprisonment of her and dissuading her from testifying against him.  The California court found that the defendant had forfeited his right to confront his girlfriend by his own wrongdoing, which consisted of the following:

> About a week before he was arrested, defendant went to E.'s apartment and spoke with her to "make peace." On the day he was arrested, he called E. from jail. He told her she needed to call law enforcement and tell them she had made a false report. She agreed to make the call. He continued, that she

14

needed to tell law enforcement it was all a lie. She agreed to tell them that. He told her it was "the only way," the only thing she could do, because he wanted to marry her, and if he went to prison he would not have her anymore. She promised she would get him out. He told her in his arms was the only place he wanted to be. He urged her to "fuckin' do this baby." She again promised she would.

Shortly after that phone call, E. contacted the police department and told them she wanted to change her story, and what they had in their report was not accurate. She also contacted the district attorney's office and informed them she had lied in the report. Although E. had earlier contact with law enforcement after the incident between herself and defendant, she did not indicate she wanted to recant her statements or had lied in her statements until after the September 9 phone call with defendant; a phone call in which he encouraged her to not cooperate with law enforcement and cajoled her by promising to marry her, but only if she could get him out of jail by not cooperating with law enforcement. It was reasonable to infer from this evidence, that defendant's statements telling her not to cooperate with law enforcement and promising to marry her but only if she got him out of jail were intended to, and did, cause E. to recant her statements to law enforcement, and later, to refuse to testify despite a grant of immunity.

*Id*. at 469-70.

The California court found that this evidence, as well as other similar evidence, was sufficient to support the trial court's determination that the defendant had engaged in wrongdoing and therefore forfeited his claim that his constitutional right to confront the witness. In reaching this decision, the court

recognize[d] defendant's statements here were not explicitly threatening or directive. However, consistent with the broad construction of the elements required for the application of this

15

doctrine, and the underlying purpose to prevent defendant from undermining the judicial process, we do not find such explicit behavior to be necessary. *This view is particularly apt in the context of domestic violence offenses and abusive relationships, which typically include an element of inherent psychological coercion, and the reality that "[t]his particular type of crime is notoriously susceptible to intimidation or coercion of the victim to ensure that [the witness] does not testify at trial*." (*Davis v. Washington* (2006) 547 U.S. 813, 832-833, 126 S.Ct. 2266, 165 L.Ed.2d 224.)

Whether a defendant's conduct constitutes "wrongdoing" depends not necessarily on its character, but on the defendant's intent and whether his actions caused the witness not to appear. *It is true that most of the reported cases involving this exception to the Confrontation Clause involve serious criminal conduct*, but that does not preclude courts from finding that nonthreatening conduct such as occurred here qualifies as wrongdoing under the appropriate legal standard where the defendant acted with the intent to procure the witness's absence from court.

264 Cal. Rptr. at 471 (emphasis added); s*ee also State v. Hallum*, 606 N.W.2d 351, 358 (Iowa 2000) (finding forfeiture by wrongdoing where defendant, asserting his influence over his step-brother who was a co-defendant and had agreed to testify against the defendant, sent letters to his half-brother advising him to persist in not testifying, to "hang in there" and "calm down," but made no actual threats.).

Interestingly, in her dissenting opinion in *Reneaux*, Justice Elena J. Duarte, found the defendant's conduct insufficient to warrant a forfeiture of his constitutional right to confront his accuser, despite the crime involved being inextricably connected with domestic violence. *See* 264 Cal.Rptr.3d at 478 (Duarte, J., dissenting). Justice Duarte

16

criticized the court for finding that two brief excerpts of phone calls, separated by four months, and which were nonthreatening and not in violation of any no-contact order rose to a sufficient level to warrant forfeiture of "a bedrock constitutional right." *Id*. at 479. Instead, Justice Duarte stated that the defendant's conduct simply did not compare to the type of conduct other courts had found sufficient to find that a constitutional right was forfeited. Specifically:

> In the all-too-typical case involving forfeiture by wrongdoing, the defendant prevents a witness from testifying or cooperating with law enforcement by *killing* the witness before trial. (See, e.g., *Giles v. California* (2008) 554 U.S. 353, 356, 128 S.Ct. 2678, 171 L.Ed.2d 488; *People v. Kerley*, *supra*, 23 Cal.App.5th at pp. 556-557, 233 Cal.Rptr.3d 135; *People v. Banos* (2009) 178 Cal.App.4th 483, 485, 100 Cal.Rptr.3d 476; *United States v. Cazares* (9th Cir. 2015) 788 F.3d 956, 975; *United States v. Jackson* (4th Cir. 2013) 706 F.3d 264, 265; *United States v. Dhinsa* (2d. Cir. 2001) 243 F.3d 635, 652; *United States v. Cherry* (10th Cir. 2000) 217 F.3d 811, 814-815; *United States v. Emery* (8th Cir. 1999) 186 F.3d 921, 926; *United States v. Houlihan* (1st Cir. 1996) 92 F.3d 1271, 1279; *United States v. White* (D.C. Cir. 1997) 116 F.3d 903, 911.) But on occasion the definition of wrongful conduct has been expanded to include threats, intimidation, and bribery. (See, e.g., *United States v. Johnson* (9th Cir. 2014) 767 F.3d 815, 818 [death threats]; *People v. Jones* (2012) 207 Cal.App.4th 1392, 1399, 144 Cal.Rptr.3d 571 [threat of violence] (*Jones*); *United States v. Jackson*, *supra*, 706 F.3d at p. 267, citing *United States v. Carlson* (8th Cir. 1976) 547 F.2d 1346, 1358-1359 [intimidation]; *State v. Mechling* (2006) 219 W.Va. 366, 633 S.E.2d 311, 326 [physical violence]; *People v. Geraci* (1995) 85 N.Y.2d 359, 625 N.Y.S.2d 469, 649 N.E.2d 817, 823-824 [bribery].) Where there is a history of domestic violence, repeated violations of court orders during jail visits and phone calls may also constitute wrongful conduct. (See *United States v. Montague* (10th Cir. 2005) 421 F.3d 1099, 1102-1104.) Prior to *Crawford*, wrongful conduct had "also been held to include persuasion and control by a defendant, the

wrongful nondisclosure of information, and a defendant's direction to a witness to exercise the fifth amendment privilege." (*Steele v. Taylor* (6th Cir. 1982) 684 F.2d 1193, 1201, disapproved on another point in *Burns v. Estelle* (5th Cir. 1983) 695 F.2d 847.)

Here, defendant displayed *none* of these tactics. As the majority agrees, the defendant's conduct was neither threatening nor in violation of a court order. . . . And although *Crawford* accepted the doctrine of forfeiture by wrongdoing as an equitable doctrine (see *Crawford*, *supra*, 541 U.S. at p. 62, 124 S.Ct. 1354), the Court also reaffirmed therein *the importance of the constitutional right to confront one's accuser by severely limiting those circumstances under which that right could be circumvented. Regardless of the effect of Crawford on the doctrine at issue here, the majority has not cited (and I have not found) any case that has applied the doctrine to the type of conduct seen here*[.]

*Reneaux*, 264 Cal.Rptr.3d at 479-80 (some emphasis added) (footnote omitted); *see Commonwealth v. Edwards*, 830 N.E.2d 158, 168-69 (Mass. 2005) (adopting the doctrine of forfeiture by wrongdoing, finding that the doctrine may be applicable to cases in which the defendant colluded with a witness to plan for the witness's unavailability, and stating that "[w]ithout question, the doctrine should apply in cases where a defendant murders, threatens, or intimidates a witness in an effort to procure that witness's unavailability. Similarly, forfeiture will be triggered where a defendant commits a criminal act, such as a violation of our witness tampering statute, G.L. c. 268, § 13B, in order to procure the witness's unavailability.") (footnotes omitted).

Given the dearth of legal support for the majority's conclusion that wrongdoing existed in this case sufficient to find the petitioner forfeited his Sixth Amendment right to confront witnesses, I am baffled by the majority's willingness to ignore Justice Scalia's admonishment in *Giles*. The majority has pulled the plug on any notion of fairness in its determination that these rather benign, nonthreatening statements made by the petitioner to his co-defendant constituted wrongdoing sufficient to forfeit his constitutional right to confront the witnesses against him.

For all the foregoing reasons, I respectfully dissent.