# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 30

State of North Dakota,                                    Plaintiff and Appellee

v.

Sheldon George Davis,                                  Defendant and Appellant

No. 20210152

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Tristan J. Van de Streek, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Megan J. K. Essig (argued), Assistant State's Attorney, Carmell F. Mattison (on brief), Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Sheldon George Davis appeals from an amended criminal judgment entered after a jury found him guilty of intentional or knowing murder, endangering by fire, and arson. Davis argues his Sixth Amendment right to confrontation was violated when the district court admitted testimonial hearsay statements made by the victim under the theory of forfeiture by wrongdoing. Davis also argues the court erred by ordering him to pay restitution without holding a restitution hearing. We affirm the original judgment of conviction, reverse the amended criminal judgment, and remand for a restitution hearing.

I

[¶2]   The State charged Davis with murder, endangering by fire or explosion, and arson after a body was discovered in his apartment following a fire. Prior to trial, the district court held an evidentiary hearing on the State's motion in limine regarding the admission at trial of certain statements made by the victim, Denise Anderson, in the months leading up to her death. Anderson made statements to the Fargo Police Department and others, including a neighbor, of instances of Davis physically and sexually assaulting her, stalking her, and vandalizing her car. Davis objected to the introduction of Anderson's statements on Sixth Amendment confrontation grounds. The court reserved its ruling on the motion until trial.

[¶3]   A jury trial was held in March 2021. Witnesses testified Davis had been engaged in a "turbulent" relationship with the victim for several months. The State introduced evidence that Davis believed he "was in trouble with the police" because of his alleged assault on Anderson. Witnesses testified Davis knew Anderson was "trying to get him for a domestic on her," and Anderson had told Davis she "was going to put him in jail this time." Anderson's neighbors testified regarding Davis's behavior, stating Davis was seen "sitting out in his vehicle" "just kind of watch[ing] her apartment" for hours at a time.

According to witnesses, Anderson wanted to file a restraining order against Davis after the assault. Davis also seemed "concerned" after police told him they wanted to meet with him regarding the assault investigation.

[¶4] A witness reported Davis had become "agitated" and "aggressive" in the weeks leading up to Anderson's murder. Recordings depicting conversations between Davis and Anderson were extracted from Davis's phone. In the recordings, Davis confronted Anderson about the police investigations, stating a detective had told him about Anderson's reported sexual assault. Davis asked Anderson, "Did you tell him that? That I raped you?" When Anderson confirmed the report, Davis attempted to get her to retract her statement, saying "Why'd you tell him that though? Because I did not." A video was also extracted from Davis's phone, showing a note Anderson had purportedly written which stated, "Sheldon is going to kill me." In the video, Anderson denied writing the note. Davis then asked her, "So you really thought I was going to kill you?"

[¶5] Outside the hearing of the jury, and over Davis's objection, the district court ruled it would admit Anderson's statements, applying the doctrine of forfeiture by wrongdoing and finding from the evidence presented that "the motive behind the homicide was to make Ms. Anderson unavailable for any testimony [and] to stop the investigation into" Davis's alleged sexual assault and physical assault. The State presented witnesses eliciting statements Anderson had made before she died. The State introduced testimony regarding Anderson's statements to officers who investigated her claim that Davis had physically and sexually assaulted her. The State also introduced 911 calls, in which Anderson reported Davis had been stalking her following the assault and that she suspected he had broken her vehicle window. The court allowed the 911 calls under N.D.R.Ev. 404(b) for the purpose of showing motive.

[¶6] The jury returned guilty verdicts on all three charges. On May 10, 2021, the court sentenced Davis to life without parole and stated restitution would be left open for 60 days. At the sentencing hearing, the State informed Davis restitution would be requested for the victim's funeral expenses, including the approximate amount. The court stated on the record it would allow a

2

restitution hearing, and that the State must notice a hearing or file a stipulation within 60 days.

[¶7]   On May 17, 2021, the State moved under N.D.R.Ct. 3.2 for an amended criminal judgment to include restitution for the victim's funeral expenses as provided in a statement from the funeral home, but did not schedule a hearing. Notice of the motion and the associated documents were served on Davis's attorney the same day. Davis did not respond to the motion. The court granted the motion on June 14, 2021, without a hearing, ordering Davis to pay $3,550.00 in restitution. Davis appeals from the amended criminal judgment.

## II

[¶8]   Davis argues his Sixth Amendment right to confrontation was violated when the district court admitted testimonial hearsay statements made by Anderson. Although Davis points to no particular witness or testimony that should have been excluded, he argues generally the court misapplied the forfeiture rule and the court's findings are not adequate to support its conclusions.

[¶9]   The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This Court's standard of review for a claimed violation of a constitutional right, including the right to confront an accuser, is de novo. *State v. Poulor*, 2019 ND 215, ¶ 6, 932 N.W.2d 534 (citing *State v. Blue*, 2006 ND 134, ¶ 6, 717 N.W.2d 558).

## A

[¶10] The Confrontation Clause bars the admission of out-of-court testimonial statements unless the witness is unavailable and the defendant has had a prior opportunity to examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Minnesota Supreme Court has summarized an exception to confrontation announced by the United States Supreme Court:

3

There is a narrow exception to the confrontation right, referred to as forfeiture by wrongdoing, which "extinguishes confrontation claims on essentially equitable grounds . . . ." [*Crawford*] at 62, 124 S.Ct. 1354 (citing *Reynolds v. United States,* 98 U.S. 145, 158-59, 25 L.Ed. 244 (1879)). The forfeiture-by-wrongdoing exception is aimed at defendants who intentionally interfere with the judicial process. The Supreme Court has said that "[W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce." *Davis v. Washington,* 547 U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). The Court has also said that "[w]hile defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system." *Id.*

*State v. Cox*, 779 N.W.2d 844, 850-51 (Minn. 2010).

[¶11] Under the forfeiture doctrine, the defendant may forfeit both constitutional and hearsay objections if their conduct causes the declarant's unavailability. 5 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 802.05[6], p. 802-95 (M. Brodin ed., 2d ed. 2021). The forfeiture doctrine was codified in 1997, when the United States Supreme Court approved Rule 804(b) of the Federal Rules of Evidence, and applies only when the defendant "engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." *Giles v. California*, 554 U.S. 353, 367 (2008). We have recognized the constitutional forfeiture doctrine by adopting the hearsay exception based on the same theory under N.D.R.Ev. 804(b)(6). *See* Explanatory Note ("Rule 804 was amended, effective March 1, 2000, to follow the December 1, 1997, federal amendment" and noting "Rule 804(b)(6) provides for forfeiture of the right to object on hearsay grounds due to a party's own wrongdoing").

[¶12] Although this Court has never addressed the doctrine of forfeiture by wrongdoing, we note the majority of jurisdictions adopting the doctrine have applied tests with elements which are substantively the same, although articulated differently. *See, e.g., State v. Poole*, 2010 UT 25, ¶ 20, 232 P.3d 519 ("[T]he forfeiture test is articulated through a three-element test that requires

4

the state to show (1) the witness is unavailable at trial, (2) the witness's unavailability was caused by a wrongful act of the defendant, and (3) the defendant's act was done with an intent to make the witness unavailable."); *People v. Burns*, 832 N.W.2d 738, 743-44 (Mich. 2013). Relying on the principles set forth in *Giles,* the Minnesota Supreme Court adopted a four-part test that requires the State to prove: (1) that the declarant-witness is unavailable; (2) that the defendant engaged in wrongful conduct; (3) that the wrongful conduct procured the unavailability of the witness; and (4) that the defendant intended to procure the unavailability of the witness. *Cox*, 779 N.W.2d at 851. In *Cox,* the Minnesota Supreme Court established that the preponderance of the evidence standard applies to the State's burden of proof. *Id.* at 852; *see also United States v. Emery*, 186 F.3d 921, 927 (8th Cir. 1999) (requiring proof by a preponderance of the evidence). We agree with the four-part test announced in *Cox*, and conclude the State must prove those elements of forfeiture by wrongdoing to the trial court by a preponderance of the evidence.

B

[¶13] Considering the test adopted above, Davis does not dispute that Anderson was unavailable, that he engaged in wrongful conduct, or that his wrongful conduct procured Anderson's unavailability. Nor does the State dispute that Anderson's statements accusing Davis of assault, stalking, and vandalism were testimonial. Although not challenged here, this Court has previously stated statements made to friends and family generally are not testimonial statements and *Giles* did not extend the Sixth Amendment's confrontation right to all statements made by a deceased declarant. *State v. Aguero*, 2010 ND 210, ¶¶ 16-17, 791 N.W.2d 1 (citing *Giles* and noting the Confrontation Clause only excludes testimonial statements; statements made to friends and neighbors may be excluded only by hearsay rules, if at all).

[¶14] Rather, Davis contends the State failed to prove his wrongful conduct was intended to prevent Anderson from testifying. Davis argues the court was required to find Davis "specifically intended to kill Ms. Anderson in order to

5

keep her from testifying at her murder trial," and the lack of such a finding renders the doctrine of forfeiture by wrongdoing inapplicable.

[¶15] We disagree with Davis that the State had to show he intended to keep the victim from testifying at her murder trial. "[T]he requirement of intent 'means that the exception applies only if the defendant has in mind the particular purpose of making the witness unavailable.'" *Giles*, 554 U.S. at 367. According to one learned treatise, the State is required to prove intent beyond that needed "to sustain conditions in which abuse can occur, that shows that the alleged abuser actually intended to keep the victim from testifying, and murder or assault in the setting of an ongoing intimate or domestic relationship is not enough by itself to support the necessary inference of intent." 5 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 8:134, p. 238-39 (4th ed. 2013). Other courts that have considered the issue have noted, while the State must prove the defendant intended to prevent the victim's testimony, the majority rule does not require the defendant intend to prevent testimony in a particular trial or proceeding. *See Vasquez v. People*, 173 P.3d 1099, 1104 (Colo. 2007) (defendant's intent need not attach to any particular proceeding; defendant need only intend to render the declarant unavailable "as a witness" to forfeit his right to confront that witness); *People v. Peterson*, 2017 IL 120331, ¶ 54 ("[F]orfeiture doctrine could apply not only where the defendant's efforts were designed to prevent testimony at trial, but also where the defendant's efforts were designed to prevent testimony to police."); *Emery*, 186 F.3d at 926 (rejecting defendant's argument that forfeiture "should apply only in a trial on the underlying crimes about which he feared [victim] would testify, not in a trial for murdering her").

[¶16] The Missouri Supreme Court has previously faced a question similar to Davis's argument. *See State v. McLaughlin*, 265 S.W.3d 257 (Mo. 2008). In *McLaughlin,* the defendant had been originally charged with burglarizing the victim's home. *Id.* at 260. Following his arraignment for the burglary charges, the defendant murdered the victim. *Id.* At the murder trial, the defendant argued forfeiture by wrongdoing "cannot apply where the purpose of keeping the witness away was not related to the present case." *Id.* at 272. According to the defendant,

the exception would apply at a trial for the burglary of the victim's home and at an adult abuse trial if he killed her to keep her from testifying at that burglary trial and adult abuse trial, but here he is being tried for murder, and since he did not kill her in order to keep her from testifying at his trial for her own murder, the exception would not apply.

*Id.* The court rejected McLaughlin's argument. Although "the state must show that the defendant engaged in the wrongdoing with the intent to prevent the witness from testifying," the court noted Justice Scalia's application of the forfeiture doctrine to domestic violence cases:

> Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine. Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

*Id.* (quoting *Giles*, 554 U.S. at 377). Where the court found the defendant intended to make the victim unavailable as a witness in the underlying burglary and abuse cases, the statements were also admissible in a trial for the victim's murder. *Id.* at 273, n.10. We have discovered no requirement "to prove the specific nature of testimony that the witness might give if she testified, or to prove that defendant was seeking to avoid trial or conviction for any particular charge." Mueller, *Federal Evidence*, at 234-35. "[T]he required intent may exist well in advance of any criminal charges being filed, so long as the person who engages in wrongful conduct has the intent of silencing a potential witness in a foreseeable criminal or other proceeding." *Id.*

[¶17] Here, the district court heard testimony Anderson "had gone to the police about the alleged assault, and [Davis] was afraid that he was going to be in

trouble for that." Witnesses stated Davis knew Anderson "had been talking to the police quite a bit concerning the altercation they had," and Anderson had told Davis he was going to jail. Witnesses further testified Davis had said "the girl that he was seeing pressed charges against him for rape and assault." Davis reportedly told a witness, "I don't want to do time. I'm not going to prison." Further testimony indicated Anderson wanted to file a restraining order against Davis, and Davis had attempted to get Anderson to withdraw her police report concerning the assault. When considering admission of evidence under N.D.R.Ev. 404(b), the court discussed Davis's motive stating, "During the time between the alleged assault and the alleged homicide, Mr. Davis was trying to get Ms. Anderson to recant her story, stalking her. Mr. Davis was aware that Ms. Anderson had reported the alleged assault to the police and that an investigation was ongoing."

[¶18] In applying forfeiture by wrongdoing, the district court stated:

> Ms. Anderson is, of course, unavailable. The standard that I'm applying is preponderance of the evidence. There is preponderance of the evidence here that the Defendant engaged in wrongful conduct to secure her unavailability as a witness. As a result of the wrongful conduct, Ms. Anderson is not able to be a witness and for that Mr. Davis intended to procure the unavailability of the witness. Specifically, this is with respect to the allegation of a sexual assault and a physical assault, I intend to apply the line of cases provided in the State's brief, indicating that the forfeiture by wrongdoing can extend to the homicide trial. So there's a preponderance of the evidence here that Ms.—the motive behind the homicide was to make Ms. Anderson unavailable for any testimony, to stop the investigation into the alleged rape—or excuse me, the alleged sexual assault, the alleged physical assault that allegedly occurred here in this case. So I'm applying those forfeiture by wrongdoing tests.

The court found Davis's intent was to procure Anderson's unavailability as a witness. The court, in multiple recitations on the record, found a preponderance of the evidence supported Davis's intent to procure the unavailability of the witness and to prevent Anderson from assisting with the investigation into the alleged sexual assault or from testifying at any ongoing

criminal proceeding. We conclude the evidence presented supports the court's findings and the findings are adequate for our de novo review. We conclude the court did not err in applying the forfeiture doctrine when it admitted Anderson's statements.

## III

[¶19] Davis also argues the district court ordered an illegal sentence by requiring him to pay restitution without holding a hearing, in violation of N.D.C.C. § 12.1-32-08. The State argues a hearing was not required because Davis did not file a brief in response to the motion for restitution or otherwise contest the amount requested.

[¶20] A sentence is illegal if it is not authorized by the judgment of conviction. *State v. Edwards*, 2007 ND 113, ¶ 5, 736 N.W.2d 449 (discussing an illegal sentence in the context of N.D.R.Crim.P. 35(a)). Here, the district court informed the parties it would allow a restitution hearing and required the State to notice the hearing or file a stipulation within 60 days. The criminal judgment stated that "a restitution hearing shall be set or stipulation to be filed." Regardless of whether the court followed the procedural requirements of N.D.R.Ct. 3.2, as argued by the State, the State's motion did not schedule a restitution hearing or provide a stipulation as required by the judgment of conviction. The court issued an illegal sentence by amending the judgment without following the terms it authorized for amendment of the criminal judgment.

## IV

[¶21] We hold the district court did not err in admitting Anderson's statements, and affirm the conviction and the original judgment. We reverse the amended judgment and remand for a hearing on restitution or the filing of a stipulation as required by the original judgment.

[¶22] Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Daniel J. Crothers

9

Lisa Fair McEvers

Jerod E. Tufte